IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:22-cv-00135-MR-WCM

| | |
|---|---|
| JEFFREY SCOTT SMITH,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | MEMORANDUM AND RECOMMENDATION |

This matter is before the Court following the filing of Plaintiff's Motion for Summary Judgment (Doc. 10), Defendant's Social Security Brief (Doc. 13), and Plaintiff's response (Doc. 14), which have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I. **Procedural Background**

On June 20, 2019, Plaintiff Jeffrey Scott Smith ("Plaintiff") filed an application for supplemental security income. Transcript of the Administrative Record ("AR") 188-190; see also, AR 191-196. Plaintiff alleges disability beginning on January 1, 2012.

On September 29, 2021, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued

1

an unfavorable decision. AR 12-32. That decision is the Commissioner's final decision for purposes of this action.

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "arthritis; obesity; depression; anxiety; a panic disorder; and a substance use disorder." AR 17. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work … except he is limited to the following: occasional posturals except no climbing ladders, ropes, or scaffolds; overhead reaching with the bilateral upper extremities frequently; handling and fingering with the bilateral upper extremities frequently; avoid concentrated exposure to hazards and vibrations; limited to simple, routine, repetitive work; occasional contact with coworkers and supervisors; no public contact; and reasoning one, two, and three jobs.

AR 19.

Applying this RFC, the ALJ found that from June 20, 2019 through the date of his decision, Plaintiff had the ability to perform certain jobs that existed in significant numbers in the national economy such that Plaintiff was not disabled. AR 26.

### III. Plaintiff's Allegations of Error

The undersigned reads Plaintiff's briefing as arguing that the ALJ: (1) failed to evaluate Plaintiff's hearing testimony regarding his physical abilities appropriately; (2) failed to account for Plaintiff's obesity adequately; (3) failed to evaluate opinion evidence regarding Plaintiff's physical and mental limitations appropriately; and (4) failed to account for Plaintiff's moderate limitations in concentrating, persisting, or maintaining pace properly.

### IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial

evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Discussion

### A. Plaintiff's Testimony

Plaintiff argues that the ALJ failed to account for Plaintiff's hearing testimony that Plaintiff has trouble "reaching above," "gripping and holding stuff," and lifting anything between ten and twenty pounds without hurting his hands, elbows, and shoulders. See Doc. 11 at 10-11.

The ALJ acknowledged Plaintiff's testimony regarding Plaintiff's symptoms, but found that testimony to be inconsistent with or not supported by Plaintiff's medical records. AR 21. Specifically, the ALJ noted that Plaintiff's medical records since June 20, 2019 reflected no ongoing joint pain and included Plaintiff's self-reports of activities such as camping and cleaning up

4

and remodeling his mother's rental property, and that prior imaging of Plaintiff's hands revealed an old healed metacarpal fracture but were "otherwise unremarkable." AR 21; see also AR 812 (Plaintiff's self-report of remodeling and cleaning his mother's rental property); AR 444-449 (2016 x-rays).

Further, in his opinion, the ALJ limited Plaintiff to light work[1] with additional limitations of "frequent" overhead reaching and "frequent" handling and fingering. "'Frequent,' which is defined as occurring from one-third to two-thirds of the time, is a limitation." Glazebrook v. Kijakazi, No. 5:22-cv-166-MOC, 2023 WL 3313103, at *5 (W.D.N.C. May 8, 2023) (citing SSR 83-10, 1983 WL 31251, at *6; Carter v. Saul, No. 1:19-cv-00191, 2020 WL 1502860, at *5 (S.D. W. Va. Mar. 30, 2020) (explaining in a case involving frequent reaching that "frequent" in an RFC context signifies that an ALJ is "instituting a limitation upon the work that a claimant may perform, as 'frequent' is a limitation against jobs that would involve 'constant' reaching")). Plaintiff does not explain why these limitations are inadequate.

The undersigned does not recommend remand on this basis.

---

[1] The regulations define light work as work that involves lifting no more than 20 pounds at a time "with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b).

## B. Obesity

Although obesity is no longer a listed impairment, Social Security Ruling 02-1p requires that it be considered throughout the sequential analysis. SSR 02-1p, 2002 WL 34686281; see also Henson v. Berryhill, No. 1:15-cv-123-RJC, 2017 WL 5195882, at *4 (W.D.N.C. Nov. 9, 2017).

However, "there are exceptions to the duty of discussing obesity." Henson, 2017 WL 5195882, at *5 (the ALJ's failure to mention a claimant's obesity was excused because the claimant failed to list obesity in her application for disability benefits and, critically, the ALJ relied on medical records that adequately portrayed claimant's obesity); see also Greer v. Colvin, No. 1:16-cv-397-DSC, 2017 WL 3090275, at *2 (W.D.N.C. July 20, 2017) (rejecting plaintiff's argument that the ALJ erred by failing to evaluate obesity where medical records did not indicate any functional limitations "caused or aggravated by Plaintiff's weight" and plaintiff did not identify any weight-related issues when asked why she was unable to work).

Here, the ALJ found Plaintiff's obesity to be a severe impairment at step two of the sequential evaluation process. AR 17. When developing Plaintiff's RFC, the ALJ again noted Plaintiff's obesity but did not identify any specific limitations stemming from or exacerbated by Plaintiff's obesity. See AR 21 (recognizing that "the combined effects of obesity with another impairment may be greater than the effects of each of the impairments considered

separately" and noting that Plaintiff's medical recorded included "entries by medical providers that reflect recommendations and encouragement for weight loss").

Although the ALJ's discussion of Plaintiff's obesity is sparce, Plaintiff does not provide any evidence of additional limitations that should have been included in his RFC due to obesity. See Barnes v. Astrue, No. 1:11CV285–MR–DSC, 2012 WL 5457348, at *3 (W.D.N.C. Oct. 16, 2012) ("Plaintiff has the burden of showing that the ALJ failed to address evidence in the record indicating limitations resulting from her obesity"), *recommendation adopted*, 2012 WL 5457482 (W.D.N.C. Nov. 8, 2012).

Therefore, the undersigned does not recommend remand on this basis.

### C. Consideration of Opinion Evidence

For applications filed on or after March 27, 2017, the Administration has changed how adjudicators assess medical opinions and prior administrative medical findings. See 82 Fed. Reg. 5844-01; 20 C.F.R. § 404.1520c(a)); 20 C.F.R. § 416.920c(a).[2] Specifically, an ALJ is now required to consider and articulate

---

[2] The revised regulations define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review…in your current claim based on their review of the evidence in your case record." See 20 C.F.R. §§ 404.1513(a)(5); 416.913(a)(5). Prior administrative medical findings include state agency consultant findings regarding the severity of a claimant's symptoms, whether a claimant's impairments

how persuasive he or she finds each medical opinion or prior administrative medical finding to be. 20 C.F.R. §§ 404.1520c(a)); 416.920c(a). In that regard, the regulations list numerous factors that are to be considered, as appropriate: supportability, consistency, relationship with the claimant, specialization, and "other factors" (such as familiarity with other evidence in the claim or an understanding of program policies and evidentiary requirements). Of these factors, "supportability" and "consistency" are the most important. See 20 C.F.R. §§ 404.1520c(a) & (c); 416.920c(a) & (c). "Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself. Consistency is an external check that references evidence from other medical and nonmedical sources." Bright v. Saul, No. 1:19CV504, 2020 WL 4483008, at *2 (M.D.N.C. Aug. 4, 2020).

### 1. Dr. Steven Burgess

Plaintiff contends that the ALJ erred by failing to evaluate adequately the medical opinion of Dr. Burgess, who conducted an internal medicine examination of Plaintiff on June 25, 2020 and issued a consultative examination report on June 29, 2020. AR 840-844.

In that June 29 report, Dr. Burgess noted that Plaintiff's lymphedema of the bilateral lower extremities was "under reasonable control" but that such

---

meet or medically equal a listing, and about a claimant's residual functional capacity. Id.

control was limited by Plaintiff's "ability to stay off his feet and keep his feet elevated during the day" as well as Plaintiff's ability to "tolerate constrictive clothing…." AR 844. Dr. Burgess also stated that Plaintiff had "neuropathy which [had] not been fully exclaimed [sic]" and arthritis. Id. Dr. Burgess' summary, though, indicated that Plaintiff's ability to bend, stoop, lift, walk, crawl, squat, carry, travel, and push or pull heavy objects was "mildly impaired due to the sum of physical findings…" Id.

The ALJ found Dr. Burgess' opinion to be "generally persuasive," based on 2016 imaging of Plaintiff's right elbow, left elbow, left hand, and lumbar spine which were "negative," and "imaging studies of the right hand which reveal[ed] only an old healed fifth metacarpal fracture but [were] otherwise unremarkable." AR 24. The ALJ further noted that Plaintiff's medical records did not reflect ongoing complaints of joint pain. Id.

Accordingly, because the ALJ considered Dr. Burgess' opinion and provided an explanation regarding why he found Dr. Burgess' opinion to be "generally persuasive" the undersigned does not recommend remand on this basis.

### 2. Dr. Michael Fiore

Additionally, Plaintiff takes issue with the ALJ's consideration of a psychological evaluation completed by Dr. Michael Fiore on July 6, 2020. AR 833-838. Dr. Fiore concluded his evaluation with the following:

9

Case 1:22-cv-00135-MR-WCM   Document 15   Filed 08/29/23   Page 9 of 15

> [Plaintiff] is able to understand and retain but will have moderate difficulty following simple work-related instructions due to distractibility associated with his psychiatric conditions. He will have mild difficulty understanding and retaining and severe difficulty carrying out complex work-related instructions due to his psychiatric conditions. His attention span is impaired and will severely interfere with his ability to perform repetitive tasks on a sustained basis. He will likely have moderate-to-severe problems relating to fellow workers and supervisors due to the severity of his psychiatric conditions. His tolerance for emotional stress is poor and would likely severely-to-extremely interfere with his overall work performance. He appears to be capable of managing his financial affairs with occasional assistance.

AR 838.

The ALJ explained that he found Dr. Fiore's opinion to be "unpersuasive" because it was inconsistent with other medical evidence indicating that Plaintiff's mental impairments were stable with treatment and because there was no record of inpatient psychiatric treatment or hospitalizations. AR 24; see also AR 22-23 (citing AR 769, 814, 812, 850, 851, 863, 876, and 887 and explaining that Plaintiff's substance use disorder was generally described as stable on medication; that Plaintiff received mental health treatment from a behavioral health program through November 2019, during which time Plaintiff reported having stress but doing well; and that Plaintiff's treatment notes from other medical providers described his depression and anxiety as stable and well controlled).

As the ALJ explained the basis for his treatment of Dr. Fiore's opinion sufficiently, the undersigned does not recommend remand on this basis.

### D. Concentration, Persistence, or Pace

The ALJ found that Plaintiff was moderately impaired with respect to his ability to sustain concentration, persistence, or pace, and limited Plaintiff to "simple, routine, repetitive work" and jobs requiring a reasoning ability of "one, two, and three…" to account for these moderate impairments. AR 19, see also AR 18 ("the undersigned has considered the claimant's moderate limitation in concentrating, persisting, or maintaining pace and has accounted for such moderate limitation by limiting the claimant to simple, routine, repetitive work and reasoning one, two, and three jobs").

Plaintiff appears to argue that these limitations fail to account appropriately for his moderate impairments in concentrating, persisting, or maintaining pace. See Doc. 11 at 16-18; Doc. 14 at 2.

An ALJ who finds a plaintiff has moderate impairments in concentration, persistence, or pace is not automatically required to include a corresponding limitation in the RFC. See Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020); Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). Rather, the ALJ has two options. The ALJ may either (1) include additional limitations in the claimant's RFC to account adequately for the particular mental impairments, or, in the alternative, (2) explain the decision not to limit

11

Plaintiff's RFC further. Shinaberry, 952 F.3d at 121 (explaining that Mascio did not impose a categorical rule requiring a specific RFC regarding concentration, persistence, or pace and stating that an ALJ could explain why such a limitation was not necessary); Rivera v. Berryhill, No. 3:17-CV-00376-GCM, 2019 WL 355536, at *2 (W.D.N.C. Jan. 29, 2019).

Here, when developing Plaintiff's RFC, the ALJ noted, as discussed above, Plaintiff's medical records reflecting that Plaintiff's substance use disorder, anxiety, and depression were stable with treatment.

Additionally, the ALJ considered the opinions of state agency psychological consultants, including two who provided opinions in July 2020 and January 2021, respectively. AR 24. Specifically, Dr. Richard Cyr-McMillon indicated in his July 2020 opinion that Plaintiff was able to "sustain sufficient attention to complete simple routine tasks for a 2 hour period at a semi-rapid pace, and complete a normal workweek and make simple work related decisions." AR 77. Similarly, Dr. Stacey Fiore concluded in a January 2021 opinion that Plaintiff was able to "maintain attention, concentration, persistence, and pace for simple, routine tasks, for two hours at a time, over a normal workday/week, with normal supervision." AR 103. Dr. Stacey Fiore also noted that Plaintiff could not "carry out detailed instructions." Id. The ALJ found these two consultants' opinions to be "generally persuasive because they are supported by medical signs and findings," but stated that he had

12

considered "additional evidence" that had been "submitted that was not reviewed by the State agency physicians in determining the claimant's residual functional capacity." AR 24.

The ALJ did not, however, explain what this additional evidence was, or how it impacted his view about the opinions of the state agency consultants.

Further, even though the ALJ's reliance on the state agency consultants' opinions regarding Plaintiff's ability to concentrate, persist, and maintain the pace necessary to complete simple, routine, repetitive work was appropriate, see Norton v. Saul, 1:20-cv-00060-KDB, 2021 WL 861710, at *3 (W.D.N.C. March 8, 2021) ("The ALJ's reliance on the opinion of the state agency medical consultant that [plaintiff] could complete simple tasks even with moderate limitations in CPP satisfies the explanation necessary to support the RFC limitations"), the ALJ did not explain how a limitation to jobs requiring reasoning levels of up to three was consistent with or accounted for Plaintiff's moderate limitations in concentration, persistence, or pace.[3]

---

[3] Plaintiff has not argued that there is a conflict between his moderate impairments in concentration, persistence, or pace and the ability to perform work requiring a reasoning level of up to three. See DOT, App. C, 1991 WL 688702 (a "reasoning level of two" requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" while a "reasoning level of three" requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form").

The undersigned will recommend remand on this basis. See Harris v. Kijakazi, No. 3:20-cv-00666-MR, 2022 WL 4456264, at *4 (W.D.N.C. Sept. 23, 2022) ("A remand is necessary under these circumstances so the ALJ can connect the dots between the Plaintiff's moderate impairment in concentration, persistence, or pace and the RFC").

## VI. Recommendation

The undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 10) be **GRANTED**, and that the Commissioner's decision be **REMANDED** for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Signed: August 29, 2023

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).